Alexandr Yakovlev, Pro Se
General Delivery
South Lake Tahoe, CA 96151

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDR YAKOVLEV, | Case No.: 2:25-cv-03110-DJC-CSK |
| Plaintiff, | **PLAINTIFF'S OBJECTIONS TO** |
| v. | **MAGISTRATE JUDGE'S** |
| | **FINDINGS AND** |
| | **RECOMMENDATIONS** |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF EL DORADO; and | **(ECF No. 7)** |
| | Supported by Exhibits A–S |
| CALIFORNIA COURT OF APPEAL, THIRD APPELLATE DISTRICT; | |
| Defendants. | |

Plaintiff Alexandr Yakovlev, proceeding *pro se*, respectfully submits these objections to the Magistrate Judge's Findings and Recommendations ("F&R") issued on December 1, 2025 (ECF No. 7). Plaintiff received personal service of the F&R from the Clerk's Office in Sacramento on December 15, 2025, and these objections are timely pursuant to Federal Rule of Civil Procedure 72(b)(2).

The F&R contains several fundamental legal errors that, if adopted by the District Judge, would not only perpetuate but exacerbate the systemic denial of access to justice that Plaintiff has experienced over an extended period within the Defendant state courts. These errors include a misapplication of the narrowly tailored *Rooker-Feldman* doctrine, which improperly characterizes Plaintiff's forward-looking and

systemic challenge to institutional policies as an impermissible attempt to appeal a specific state court judgment. Additionally, the F&R introduces an erroneous and potentially unconstitutional standard that would restrict federal due process protections primarily to litigants with disabilities, thereby leaving non-disabled individuals without adequate recourse against similar procedural violations. Furthermore, the F&R's entire analytical framework is built upon the now-superseded First Amended Complaint, completely overlooking the Second Amended Complaint ("SAC," filed December 18, 2025, ECF No. 9), which serves as the operative pleading and addresses all previously identified deficiencies through detailed allegations and supporting evidence. Finally, the F&R prematurely recommends dismissal of Plaintiff's claims for prospective injunctive relief under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), disregarding key exceptions to immunity and established precedents that support such forward-looking remedies.

Before any ruling on the F&R could occur, Plaintiff filed the SAC, which now stands as the controlling document in this litigation. This amendment reframes the case as a comprehensive institutional reform effort aimed at dismantling unconstitutional customs and practices maintained by the Defendant courts—practices that systematically exclude disabled and *pro se* litigants from meaningful engagement with the judicial system. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), the District Judge is required to undertake a *de*

*novo* review of those portions of the F&R to which objections have been lodged, with the evaluation centered on the sufficiency of the operative SAC rather than any prior iteration of the complaint. Federal courts have a longstanding obligation to construe *pro se* pleadings liberally, particularly when subsequent amendments cure earlier shortcomings and provide a more robust factual basis. See *Lacey v. Maricopa County*, 693 F.3d 896, 925-26 (9th Cir. 2012) (*en banc*) (emphasizing the importance of considering amended pro se complaints that address deficiencies).

The SAC, bolstered by Exhibits A through S—including the comprehensive Emergency Motion (See Exh. S)—and the Supplemental Memorandum of Points and Authorities (ECF No. 8), presents a compelling narrative of ongoing violations that demand federal intervention. Adoption of the F&R in its current form would effectively shield these practices from scrutiny, allowing state judicial entities to function without accountability for actions that undermine core constitutional principles. This outcome would conflict with the essential role of federal courts in protecting individual rights against state encroachments, as envisioned by Congress through statutes like § 1983. See *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (recognizing § 1983 as a mechanism to prevent irreparable harm to federal constitutional rights). For the detailed reasons set forth below, the District Judge should reject the F&R in its entirety, permit this action to advance on the merits of the SAC, and grant the necessary accommodations to ensure Plaintiff's effective participation in these federal proceedings.

## I. THE F&R MISAPPLIES THE ROOKER-FELDMAN DOCTRINE BY MISCHARACTERIZING PLAINTIFF'S SYSTEMIC CHALLENGE

The core jurisdictional flaw in the F&R lies in its overly expansive application of the *Rooker-Feldman* doctrine, which the Magistrate Judge invoked to recommend dismissal on the grounds that Plaintiff's claims ostensibly seek federal review and reversal of the state court's orders entered on September 12, 2025. This interpretation fundamentally distorts the nature of the claims as articulated in the operative SAC and ignores the doctrine's intentionally limited scope, as repeatedly clarified by the Supreme Court. *Rooker-Feldman* occupies "narrow ground," barring federal jurisdiction only when a plaintiff complains of an injury *caused by* a state-court judgment and invites the district court to *review and reject* that judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It does **not** preclude independent claims alleging injuries from unconstitutional state-court *procedures* or *policies*, even if those procedures contributed to an adverse outcome. See *Skinner v. Switzer*, 562 U.S. 521, 532 (2011); *Lance v. Dennis*, 546 U.S. 459, 464 (2006).

Contrary to the F&R's characterization, the SAC does not invite this Court to act as an appellate body over the substantive merits of the state court's dismissal or sanctions orders in Case No. 25CV1460. Plaintiff is not requesting that this federal court revisit or overturn the underlying private dispute involving allegations of fraud, perjury, and retaliation by Marchita Masters, nor is there a demand for monetary

damages or retroactive invalidation based on the state court's factual findings. Rather, the SAC articulates a broad, forward-looking assault on the Defendant courts' entrenched customs and practices—policies that operate independently of any single case and continue to inflict prospective harm on Plaintiff and other similarly situated litigants by denying meaningful access to judicial services. This type of claim aligns with established precedents recognizing federal jurisdiction over systemic challenges that seek to reform ongoing violations without disturbing prior judgments. See *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (affirming the right to "adequate, effective, and meaningful" court access); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (validating forward-looking access-to-courts claims where state barriers render remedies effectively unattainable).

To illustrate, the SAC meticulously documents eight interconnected policies that form a cohesive system of exclusion, each supported by specific evidence from Plaintiff's interactions with the Defendants:

### A.     Automated, Non-Individualized Adjudication

Exemplified by the Court of Appeal's simultaneous issuance of six verbatim boilerplate orders on November 21, 2025, across three unrelated appeals (Case Nos. C104874, C104875, C104876) (See Exh. K) (Exh. K contains the copy-paste orders). These orders included identical language and erroneous cross-references to unrelated case captions and numbers, indicating a mechanized batch-processing approach rather than case-specific review. This practice undermines the Due Process Clause's

requirement for individualized consideration and the ADA's mandate for an interactive accommodation process. See *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970) (stressing the need for tailored hearings); *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999) (requiring individualized inquiries under the ADA).

### B. Discriminatory Two-Tiered Notice Administration

As shown in electronic notice logs, opposing counsel received prompt email notifications of deadlines and orders, while Plaintiff was limited to physical mail directed to inaccessible General Delivery addresses (See Exh. R) (Exh. R shows service notifications with misgendering/wrong counsel). This disparity not only delays critical information but also disproportionately affects those with mobility impairments, violating Title II's anti-discrimination provisions. *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004) (applying Title II to state courts and mandating modifications for access).

### C. Circular Filing and Prefiling Barriers

The Superior Court rejects submissions for lacking a prefiling order under the vexatious litigant statute, yet blocks the Form VL-110 application required to obtain such an order (See Exhs. M, N, O, P) (These show vexatious litigant order denials). (See Exh. J (e-filed documents never processed)). This creates a perpetual loop that makes access illusory, contravening fundamental access rights. *Bounds v. Smith*, 430 U.S. at 822; *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Harbury*, 536 U.S. at 415.

### D. Systematic Rejection of Accommodation Requests

Formal submissions via Judicial Council Form MC-410 are routinely dismissed as "defective" through automated notations, without any evidence of substantive evaluation or dialogue (See Exh. F & Exh. S, F) (Exh. F is specific rejection; Exh. S,F is ADA denial). This reflects deliberate indifference to ADA obligations. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (requiring good-faith engagement).

### E. Misapplication of Restrictive Orders Without Identity Verification

The Defendants have erroneously applied a 2009 vexatious litigant order issued against **"Alex Yakovlev"** to Plaintiff **Alexandr Yakovlev**, based solely on phonetic approximation and without verifying identity (See Exhs. A, B, C) (Identity documents showing distinct names) (See Exh. D) (Contains the sanctions/dismissal orders). This error is compounded by the fact that the opposing party's motion to dismiss and for sanctions in the underlying case was filed against **"Alexander Yakovlev"**—a third distinct spelling. The conflation of three different names ("Alex," "Alexander," and "Alexandr") without checking identifiers such as Social Security number, date of birth, or case history demonstrates a pattern of automated, non-individualized enforcement that violates due process, see *Mullane*, 339 U.S. at 314, and renders the resulting restrictions constitutionally defective and unenforceable.

### F. Persistent Misgendering and Refusal to Honor Gender-Neutral Honorifics

Despite documented gender dysphoria and explicit requests, court documents consistently use "Mr." instead of "Mx.," aggravating Plaintiff's cognitive and emotional conditions and breaching ADA modification requirements. 42 U.S.C. § 12132; See also 28 C.F.R. § 35.130(b)(7) (See Exhs. H, L & Q).

### G. Adjudication Based on Defective and Unserved Motions

The Superior Court ruled on Marchita Masters' June 17, 2025, combined motion for dismissal and sanctions, despite improper service to an unconsented email address and non-compliance with the 21-day safe-harbor rule (See Exh. D) (Contains the sanctions/dismissal orders). California Code of Civil Procedure §§ 1010.6(a)(2), 128.7(c)(1). This acceptance of flawed filings led to orders on a concealed record, voiding them for jurisdictional defects. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### H. Deliberate Indifference Through Template Denials

Seventeen subsequent filings were rejected via standardized forms falsely claiming "no merits" or left in indefinite "submitted" status, with no indication of actual review (See Exhs. E, G, Q, and Exh. S, C) (Various rejection notices). This pattern, evidenced in Exhibits A-S, constitutes extrinsic fraud undermining judicial integrity. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004).

These policies are not mere anomalies but represent a deliberate framework that prospectively bars access, warranting injunctive relief under *Ex parte Young* without implicating *Rooker-Feldman*. *Verizon Md., Inc. v. Pub. Serv. Comm'n of*

*Md.*, 535 U.S. 635, 645 (2002). The void nature of the state orders—due to fraudulent service and concealment—further precludes the doctrine's application, as federal courts retain authority to address such extrinsic defects. Upon *de novo* review, the District Judge should set aside the F&R's jurisdictional dismissal and recognize the SAC's claims as properly within federal purview.

## II. THE F&R IMPOSES AN ERRONEOUS AND UNCONSTITUTIONAL STANDARD FOR DUE PROCESS PROTECTIONS

One of the most troubling aspects of the F&R is its underlying assumption that federal intervention to address the procedural violations at issue—such as forged service, hidden motions, automated adjudications, and impenetrable filing barriers—is justified primarily because Plaintiff alleges disability discrimination under the ADA. This perspective implies that non-disabled litigants subjected to the same egregious deprivations would be left without a federal remedy, establishing an arbitrary and unconstitutional hierarchy of constitutional protections that favors certain classes over others.

The Fourteenth Amendment's Due Process Clause provides that "no State shall… deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1 (emphasis added). This language is unequivocal in its universality: it safeguards "any person," without distinctions based on disability, race, or other characteristics. The Clause ensures fundamental fairness in governmental proceedings, requiring notice reasonably calculated to inform affected parties and a

meaningful opportunity to be heard. *Mullane*, 339 U.S. at 314 (establishing notice as an "elementary and fundamental requirement"); *Goldberg*, 397 U.S. at 267 (demanding procedures that are "meaningful" and adapted to the context). When state courts deviate from these principles through coordinated misconduct—ruling on unserved motions, basing decisions on concealed evidence, and creating self-perpetuating barriers to correction—they inflict a constitutional harm that transcends individual traits.

The SAC chronicles a series of such violations in Case No. 25CV1460 and its appeals: improper email service without consent, disregard for statutory safe-harbor periods, issuance of orders on a "secret record," and subsequent rejections of remedial filings through illogical loops and rote denials (as documented in Exhs. D, J, K, M) (Key evidence of procedural defects). These actions convert the judicial process into an exercise in futility, denying the "adequate, effective, and meaningful" access guaranteed by the Constitution. *Bounds*, 430 U.S. at 822. Section 1983 was enacted to provide a federal avenue for redressing precisely these types of state-inflicted injuries, empowering courts to enjoin ongoing violations and prevent irreparable damage. *Mitchum*, 407 U.S. at 242 (positioning § 1983 as a critical exception to anti-injunction norms).

By linking due process viability to ADA abrogation of immunity, the F&R inadvertently crafts a bifurcated system: one where disabled litigants receive federal oversight, while non-disabled ones are relegated to potentially inadequate state

remedies. This approach lacks foundation in constitutional jurisprudence, which emphasizes equality in procedural protections. A non-disabled *pro se* litigant facing sanctions from an unserved motion or trapped in a prefiling paradox endures the same deprivation as Plaintiff—the injury arises from the flawed process, not personal status. To impose a disability prerequisite would erode the Clause's egalitarian core and permit states to evade accountability for widespread injustices. *Harbury*, 536 U.S. at 415 n.12 (affirming access claims for all when barriers are insurmountable).

This erroneous standard also overlooks § 1983's remedial breadth, which does not require plaintiffs to belong to protected classes unless the claim involves discrimination. Here, Plaintiff's due process allegations stand on their own, meriting federal review irrespective of disability. The District Judge, in conducting *de novo* review, must repudiate this limitation and affirm the independence of these constitutional claims.

### III.   THE F&R FAILED TO EVALUATE THE OPERATIVE SAC AND ITS DETAILED ALLEGATIONS

The F&R's screening process is inherently flawed because it examined only the First Amended Complaint, which has been entirely supplanted by the SAC filed on December 18, 2025. This oversight constitutes a significant procedural misstep, as federal courts must assess the most current pleading, especially when it provides enhanced factual detail and evidentiary support to overcome prior inadequacies. *Lacey*, 693 F.3d at 925-26 (mandating consideration of curative amendments in *pro se* cases).

The SAC transforms this litigation into a vehicle for institutional reform, offering a granular account of the Defendants' customs that collectively bar access for disabled *pro se* litigants. Supported by Exhibits A-S and the Supplemental Memorandum (ECF No. 8), it details a pattern of violations spanning multiple proceedings, including seventeen rejected filings, prolonged "submitted" statuses, and automated rejections without review. These elements violate the First Amendment's right to petition, the Fourteenth Amendment's due process and equal protection guarantees, and Title II's mandates. *Bounds*, 430 U.S. at 822; *Lane*, 541 U.S. at 533.

The SAC also underscores the ripple effects of the state courts' denials, which have impeded Plaintiff's ability to engage in this federal action by limiting access to physical mail. This interconnection highlights the need for *de novo* review grounded in the full record of the operative pleading.

### IV. THE F&R'S ADA ANALYSIS WAS PREMATURE AND OVERLOOKS THE SAC'S EVIDENCE

Although the F&R identified deficiencies in the ADA claim as pled in the prior complaint—such as inadequate specification of disability or causation—the SAC rectifies these issues comprehensively. Title II prohibits exclusion from public services "by reason of" disability. 42 U.S.C. § 12132.

Plaintiff qualifies as disabled under federal standards, as confirmed by the SSA's SSI award following extensive evaluation (See Exh. B (SSN), Exh. I (Medical Records), Exh. H (SSI Approval)). 42 U.S.C. § 1382c(a)(3)(A). The SAC alleges

Defendants' awareness of these disabilities yet denial of accommodations like electronic service, while granting them to others and exploiting disability manifestations for punitive actions. This establishes causation at the pleading stage. *Duvall*, 260 F.3d at 1135.

With immunity abrogated for judicial access claims, the ADA claim is viable. *Lane*, 541 U.S. at 533-34. Dismissal based on an outdated pleading was unwarranted.

### V. THE F&R ERRONEOUSLY DISMISSES § 1983 CLAIMS FOR PROSPECTIVE RELIEF

The SAC limits relief to prospective injunctions against ongoing violations, fitting within the *Ex parte Young* exception to sovereign immunity. 209 U.S. 123 (1908); *Verizon Md.*, 535 U.S. at 645. Quasi-judicial immunity applies only to judicial acts, not administrative policies like filing refusals or notice disparities. *Mullis v. U.S. Bankruptcy Court for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987). The F&R's blanket dismissal ignores these distinctions.

### VI. REQUEST FOR ADA ACCOMMODATION IN THIS PROCEEDING

Plaintiff seeks an order for the Clerk to serve all orders, notices, and rulings electronically via CM/ECF to 750emerealdbay@gmail.com, eschewing physical mail. This accommodation complies with Title II and 28 C.F.R. § 35.130(b)(7). Plaintiff's disabilities make mail inaccessible, a problem compounded by state denials. Without this, participation in this case is impossible, violating ADA principles.

### VII. CONCLUSION AND REQUEST FOR RELIEF

For the reasons articulated, Plaintiff requests the District Judge:

**1.** Reject the F&R in full;

**2.** Deny any construed motion to dismiss;

**3.** Order proceeding on the SAC (ECF No. 9);

**4.** Direct summons issuance and U.S. Marshals service per IFP status, or allow 30 days for service;

**5.** Take judicial notice of Exhibits A-S and ECF No. 8;

**6.** Order electronic service as detailed in Section VI;

**7.** Grant other just relief.

DATED: December 21, 2025

Respectfully submitted,

*/s/ Alexandr Yakovlev*
ALEXANDR YAKOVLEV
Plaintiff, *Pro Se*

**VERIFICATION**

I, Alexandr Yakovlev, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

Executed on December 21, 2025, at El Dorado County, California.

*/s/ Alexandr Yakovlev*
ALEXANDR YAKOVLEV
Plaintiff, *Pro Se*