Alexandr Yakovlev, Pro Se
General Delivery
South Lake Tahoe, CA 96151

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDR YAKOVLEV, | ) **Case No.:** 2:25-cv-03110-DJC-CSK |
| Plaintiff, | ) **NOTICE OF LODGING** |
| v. | ) **EXHIBIT T, REQUEST FOR** |
| | ) **JUDICIAL NOTICE, AND** |
| | ) **SUPPLEMENT TO** |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF EL DORADO; and | ) **OBJECTIONS** |
| CALIFORNIA COURT OF APPEAL, THIRD APPELLATE DISTRICT; | ) |
| Defendants. | ) |

**TO THE COURT AND ALL PARTIES:**

Plaintiff ALEXANDR YAKOVLEV, *pro se*, hereby (1) lodges **EXHIBIT T** (727 pages), (2) **requests judicial notice** pursuant to Federal Rule of Evidence 201, and (3) supplements his Objections (ECF No. 10), Second Amended Complaint (ECF No. 9), and Supplemental Memorandum (ECF No. 8). This exhibit, produced by the El Dorado Superior Court on December 22, 2025, provides **official, documentary evidence** of the systemic procedural violations that form the core of this federal action and warrant rejection of the Magistrate Judge's Findings and Recommendations (ECF No. 7).

**I.     REQUEST FOR JUDICIAL NOTICE**

Plaintiff requests the Court take judicial notice of the existence, filing dates,

captions, and contents of the official court records comprising Exhibit T. Fed. R. Evid. 201(b)(2). This request is made solely to establish what documents were filed and when—**not for the truth of disputed factual assertions** contained within them. The legal effect and jurisdictional implications of these records are matters for argument, as set forth below.

## II.  DOCUMENTED EVIDENCE OF CONCEALMENT AND PROCEDURAL DEFECTS

The newly produced record reveals a timeline of concealment and statutory non-compliance that corrupted the state court proceedings.

### A. The Court Issued Dispositive Orders Based on a Concealed Record

The Motion to Dismiss (Ex. T, pp. 686-695) and Motion for Sanctions (Ex. T, pp. 696-705) were granted on September 12, 2025. The court did not provide these motions to Plaintiff. Their first formal Request for Copies (Ex. T, p. 10) was filed October 15, 2025, accepted, and then ignored. Only after filing this federal action and a second request on December 18, 2025 (Ex. T, p. 12) did the court produce the defendant's filed records on December 22, 2025—**101 days post-dismissal**.

- **Legal Significance:** This conduct violates the fundamental due process requirement of notice. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). It prevented Plaintiff from fairly presenting a defense, which constitutes **extrinsic fraud** permitting federal review. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004).

### B. Clarification & Errata: The Court Concealed the Standalone Motion to Dismiss

Plaintiff's previous filings referenced a single, combined motion based on the only document provided by the court prior to December 22, 2025: the "Motion for Sanctions" (previously filed as Ex. D). That motion argued for dismissal within its text, leading to a reasonable assumption it was a combined filing. Exhibit T now reveals that a separate "Motion to Dismiss" (Ex. T, pp. 686-695) was filed concurrently but was concealed from Plaintiff until December 22, 2025.

- **Legal Significance:** This concealment is the operative violation. The court dismissed Plaintiff's case (Ex. T, p. 724) based on a standalone motion he was never served with and that the court withheld for over 100 days after its ruling. This is a quintessential constructive denial of notice and a secret record violation of due process. *Mullane*, 339 U.S. at 314; *Covey v. Town of Somers*, 351 U.S. 141, 146 (1956) ("The right to be heard has little reality or worth unless one is informed that the matter is pending.").

### C. The "Catch-22" and Discriminatory Notice are Documented Fact

The September 12 dismissal was predicated on Plaintiff's failure to obtain a prefiling order under CCP § 391.7. Yet, Exhibit T shows Plaintiff's first VL-110 request for *this case*—filed together with a Notice of Appeal—was submitted in October 2025 (Ex. T, "25CV1460 Request to File New Litigation," dated October 7, 2025, stamped "Received October 16, 2025" p. 17), weeks *after* the dismissal, and was denied via a boilerplate VL-115 order (Ex. T, p. 27). The court thus punished

Plaintiff for failing to complete a statutory process that, by its own docket, **had not yet been initiated**.

This procedural trap was compounded by the Court of Appeal's **discriminatory and disparate notice scheme**. On November 17, 2025, the appellate court sent Plaintiff a letter (Ex. T, pp. 28-30) demanding a new "request for permission" to appeal by November 24, 2025. Critically, this letter was **emailed to opposing counsel** for immediate receipt, but was sent to Plaintiff **only via physical mail** to an inaccessible General Delivery address. Plaintiff did not receive it until after the deadline had passed. This ensured Plaintiff could not comply with the very appellate gatekeeping requirement being enforced.

- **Legal Significance:** This sequence is not a series of unlucky errors. It is the **operationalization of an unconstitutional procedural trap**. The trial court blocked access for failure to seek leave, while the appellate court blocked review by issuing notice in a manner calculated *not* to reach a disabled, *pro se* litigant. When a state's procedural framework functions as an absolute, insurmountable bar, the remedy is patently inadequate and violates due process. *Gibson v. Berryhill*, 411 U.S. 564, 575 (1973); *See also Jones v. Flowers*, 547 U.S. 220, 229 (2006) (state must take reasonable steps when notice is likely to fail).

### III.   JURISDICTIONAL DEFECT: THE COURT ADJUDICATED THE CASE OF "ALEXANDER," NOT "ALEXANDR"

Exhibit T proves the vexatious litigant designation and dismissal were imposed on a misnamed party, a fundamental jurisdictional error.

### A. The Orders Are Facially Directed at a Non-Party

The Motion to Dismiss (Ex. T, p. 686), Motion for Sanctions (Ex. T, p. 696), and the final Order for Dismissal (Ex. T, p. 724) all caption the case against "ALEXANDER YAKOVLEV." Plaintiff's established name is ALEXANDR YAKOVLEV.

### B. Identity Was Never Established, Violating Due Process

The vexatious litigant finding relies on a 2009 order against **"Alex Yakovlev"** (Ex. T, pp. 324-326). No evidence—no SSN, declaration, or biometric data—connects "Alex" (2009) to "Alexander" (2025), or to Plaintiff "Alexandr" (asylee, 2016).

- **Legal Significance:** "Alex," "Alexander," and "Alexandr" are three distinct legal names that cannot be presumed to identify the same natural person absent proof. A court may not presume they refer to the same person without proof. See, *United States v. Holtzman*, 762 F.2d 720, 724 (9th Cir. 1985) (jurisdiction requires correct party). **When combined with the defective service described above**, the state court never acquired personal jurisdiction over Plaintiff Alexandr Yakovlev, rendering its orders void.

### IV.   CONCLUSION

Exhibit T provides the objective, documentary foundation for the claims in the SAC. It reveals a state court process that adjudicated a concealed motion against a misnamed party, enforced void orders, and used automated, non-individualized

denials to block correction.

This evidence of extrinsic fraud and systemic due process violations necessitates federal intervention under *Ex parte Young*, 209 U.S. 123 (1908), and *Tennessee v. Lane*, 541 U.S. 509 (2004), and warrants rejection of the Magistrate's Findings and Recommendations.

Respectfully submitted,

DATED: December 23, 2025



**/s/ Alexandr Yakovlev**
ALEXANDR YAKOVLEV
Plaintiff, *Pro Se*

## V. DECLARATION OF ALEXANDR YAKOVLEV IN SUPPORT OF NOTICE OF LODGING EXHIBIT T, REQUEST FOR JUDICIAL NOTICE, AND SUPPLEMENT TO OBJECTIONS

I, ALEXANDR YAKOVLEV, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in the above-captioned action and the plaintiff in the underlying state court case, El Dorado County Superior Court Case No. 25CV1460. I make this declaration based on my personal knowledge.

**Concealment of the Motion to Dismiss**

2. On September 12, 2025, the El Dorado Superior Court dismissed my case with prejudice and imposed sanctions against me. Prior to that date, I had never seen the "Motion to Dismiss" filed by Defendant Marchita Masters on July 17, 2025.

3.  The only document I received from the court related to those motions was a filing titled "Motion for Sanctions." This document contained arguments seeking dismissal within its text. Based on this, I reasonably believed the motion for sanctions and motion to dismiss were a single, combined filing.

4.  On October 15, 2025, I filed a formal "Request for Copies" with the El Dorado Superior Court, seeking a copy of the Motion to Dismiss. The court's e-filing system showed this request as "Accepted" but it was never processed.

5.  After filing the instant federal lawsuit, I submitted a second "Request for Copies" on December 18, 2025. Only then, on December 22, 2025, did the El Dorado Superior Court finally provide me with the complete record, which I have lodged as Exhibit T.

6.  Upon review of Exhibit T, I learned for the first time that a separate "Motion to Dismiss" (Ex. T, pp. 686-695) had been filed. The court's September 12, 2025, order of dismissal was based on this motion, which had been concealed from me for over 100 days after the court's ruling.

**Identity Misapplication and Defective Service**

7.  My name is ALEXANDR YAKOVLEV. I was granted asylum in the United States under this name on October 13, 2016, and my Social Security number was issued thereafter.

8.  I have never consented to receive electronic service of court documents at the email address aleksummerfield@gmail.com. The "Proof of Service" attached to

the July 17, 2025 motions (Ex. T) claiming service to that address is invalid.

9. All motions and orders in Exhibit T captioned against "Alexander Yakovlev" (Ex. T, pp. 686, 696, 724) refer to a person who is not me.

10. No court has ever made a factual finding, based on evidence such as a Social Security number, date of birth, or sworn declaration, that I am the same person as "Alex Yakovlev" (the subject of a 2009 vexatious litigant order) or "Alexander Yakovlev" (the named party in the 2025 motions).

**The Discriminatory "Catch-22" and Notice Scheme**

11. Following the September 12 dismissal, I filed a "Request to File New Litigation" (Form VL-110) together with a Notice of Appeal in October 2025. This request was denied with a boilerplate VL-115 order (Ex. T, p. 27) that contained no analysis of my submission.

12. On or about December 5, 2025, I received via email a letter from the California Court of Appeal, Third Appellate District, dated November 17, 2025. This letter stated I needed to file a "request for permission" to appeal by November 24, 2025—a deadline that had already passed by the time I received the notice.

13. I have since obtained evidence showing this same November 17 letter was sent via email to opposing counsel on November 17, 2025, providing him timely notice. For me, the court sent the letter only via physical mail to "General Delivery," an address I cannot reliably access due to my disabilities, despite the court having my active email address on file.

**14.** Prior to receiving Exhibit T on December 22, 2025, I had never seen the standalone "Motion to Dismiss." The only related document I received was titled "Motion for Sanctions," which argued for dismissal within its text, leading me to refer to it as a combined motion in prior pleadings. I now clarify the record accordingly.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on December 23, 2025, at El Dorado County, California.

*/s/ Alexandr Yakovlev*
ALEXANDR YAKOVLEV
Plaintiff, *Pro Se*