Alexandr Yakovlev, Pro Se
General Delivery
South Lake Tahoe, CA 96151

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEXANDR YAKOVLEV,

Plaintiff,

v.

SUPERIOR COURT OF
CALIFORNIA, COUNTY OF EL
DORADO, et al.,

Defendants.

**Case No.:**  2:25-cv-03110-DJC-CSK

**MOTION FOR RECUSAL
OF MAGISTRATE JUDGE CHI SOO KIM
PURSUANT TO 28 U.S.C. § 455(a)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

  CASES ............................................................................................................................. 3

  CONSTITUTIONAL PROVISIONS ............................................................................. 4

  STATUTES ...................................................................................................................... 4

  REGULATIONS ............................................................................................................. 5

  RULES ............................................................................................................................. 5

  SECONDARY AUTHORITY ........................................................................................ 5

TO THE HONORABLE DANIEL J. CALABRETTA, UNITED STATES DISTRICT JUDGE:....... 5

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 6

  I. LEGAL STANDARD FOR RECUSAL UNDER 28 U.S.C. § 455(a) .......................................... 6

  II. THE MAGISTRATE JUDGE'S ORDERS SHOW NO EVIDENCE THAT SHE READ

  PLAINTIFF'S FILINGS................................................................................................................. 8

A. The February 24, 2026 Order (ECF No. 15) Is a One-Sentence Denial That References None of Plaintiff's Evidence ............................................................................................................ 8

B. The December 1, 2025 Order (ECF No. 7) Also Shows No Engagement with Plaintiff's Evidence ................................................................................................................................ 11

III. THE MAGISTRATE JUDGE'S LEGAL ERRORS IN HER FINDINGS AND RECOMMENDATIONS ........................................................................................................ 12

A. The Magistrate Judge Erroneously Held That Quasi-Judicial Immunity Bars Injunctive Relief Against State Judicial Officers Sued in Their Official Capacities ................................ 12

B. The Magistrate Judge Misapplied the *Rooker-Feldman* Doctrine Far Beyond Its Narrow Scope ......................................................................................................................................... 13

C. The Magistrate Judge Failed to Apply *Tennessee v. Lane* ......................................................... 14

IV. THE PATTERN OF JUDGES SIGNING ORDERS WITHOUT READING THEM .............. 15

A. Judge Mayberry's Ruling on Concealed Motions .................................................................. 15

B. Presiding Judge McLaughlin's VL-115 Order ........................................................................ 16

C. The Court of Appeal's Boilerplate Orders .............................................................................. 17

D. The Immigration Courts – Two Decades of Refusal to Read Evidence ................................... 17

E. Magistrate Judge Kim's Pattern Mirrors the State Courts and Immigration Courts ................ 18

V. THE MAGISTRATE JUDGE'S ORDERS CONTRADICT EACH OTHER WITHOUT ANY EXPLANATION .................................................................................................................. 19

VI. THE MAGISTRATE JUDGE IGNORED EVIDENCE THAT THE STATE COURT RULED ON CONCEALED MOTIONS ................................................................................................ 20

MOTION FOR RECUSAL

VII. THE MAGISTRATE JUDGE HAS DEMANDED IMPOSSIBLE COMPLIANCE .............. 21

VIII. THE ASYMMETRICAL TREATMENT OF PRO SE DISABLED LITIGANTS ................ 22

IX. THE VL-115 FORM AND THE PATTERN OF BOILERPLATE DENIAL ........................... 25

X. PLAINTIFF'S DOCUMENTED HISTORY OF JUDICIAL REJECTION AND MEDICAL

HARM ....................................................................................................................................... 25

XI. THE CUMULATIVE EFFECT OF THESE ERRORS REQUIRES RECUSAL...................... 26

  Magistrate Judge Kim has: .................................................................................................. 26

XII. THE FEDERAL COURTS IMPROVEMENT ACT DOES NOT BAR THIS MOTION ....... 28

XIII. PLAINTIFF DOES NOT SEEK RECUSAL LIGHTLY .......................................................... 28

XIV. REQUEST FOR RELIEF ......................................................................................................... 29

  Plaintiff respectfully requests that the Court:.................................................................... 29

**TABLE OF AUTHORITIES**

**CASES**

*Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813 (1986)

*Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013)

*Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001)

*Ex parte Young*, 209 U.S. 123 (1908)

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)

*In re Murchison*, 349 U.S. 133 (1955)

*John v. Superior Court*, 63 Cal.4th 91 (2016)

*Jones v. Flowers*, 547 U.S. 220 (2006)

MOTION FOR RECUSAL

*K.M. v. Tustin Unified School District*, 725 F.3d 1088 (9th Cir. 2013)

*Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004)

*Lance v. Dennis*, 546 U.S. 459 (2006)

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988)

*Liteky v. United States*, 510 U.S. 540 (1994)

*Mark H. v. Hamamoto*, 620 F.3d 1090 (9th Cir. 2010)

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)

*Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1385 (9th Cir. 1987)

*Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003)

*Pesnell v. Arsenault*, 543 F.3d 1038 (9th Cir. 2008)

*Pulliam v. Allen*, 466 U.S. 522 (1984)

*Skinner v. Switzer*, 562 U.S. 521 (2011)

*Tennessee v. Lane*, 541 U.S. 509 (2004)

*United States v. Hernandez*, 109 F.3d 1450 (9th Cir. 1997)

*United States v. Holland*, 519 F.3d 909 (9th Cir. 2008)

*Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002)

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004)

*Yagman v. Republic Insurance*, 987 F.2d 622 (9th Cir. 1993)

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XIV (Due Process Clause)

**STATUTES**

28 U.S.C. § 455(a)

42 U.S.C. § 1983 (Federal Courts Improvement Act of 1996)

MOTION FOR RECUSAL

**REGULATIONS**

28 C.F.R. § 35.160(b)(2)

**RULES**

Federal Rule of Evidence 201

**SECONDARY AUTHORITY**

Eugene Volokh, *Federal Public Defender Submits Brief with Nonexistent Citation, Apparently Refuses to Admit This to the Judge at a Hearing*, Reason (Jan. 23, 2025)

**TO THE HONORABLE DANIEL J. CALABRETTA, UNITED STATES DISTRICT JUDGE:**

Plaintiff Alexandr Yakovlev, proceeding pro se, respectfully moves for the recusal of Magistrate Judge Chi Soo Kim pursuant to 28 U.S.C. § 455(a), which requires a judge to disqualify herself "in any proceeding in which her impartiality might reasonably be questioned." **This motion is brought solely under 28 U.S.C. § 455(a), which concerns the appearance of partiality, not actual bias.** This motion is supported by the accompanying memorandum of points and authorities, Plaintiff's declarations, the medical records in Exhibit I (ECF No. 9), the concealed court records in Exhibit T (attachment to ECF No. 13), and the entire record in this action.

The Magistrate Judge has issued multiple orders that are directly contrary to controlling Supreme Court and Ninth Circuit precedent. She has issued a one-sentence denial of Plaintiff's reasonable accommodation request without conducting the required fact-specific investigation, in violation of the Rehabilitation Act and its implementing regulations. In her Findings and Recommendations (ECF No. 7), she recommended dismissing Plaintiff's § 1983 claims against judicial officers based on a misreading of quasi-judicial immunity law — confusing federal officers in *Bivens* actions with state officers sued under § 1983 for prospective injunctive relief. She has misapplied the *Rooker-Feldman* doctrine far beyond its narrow scope as defined by the Supreme

-5-
MOTION FOR RECUSAL

Court in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). She has misgendered Plaintiff despite explicit requests for accommodation based on documented gender dysphoria.

These legal errors are not isolated. They form a pattern. And that pattern directly replicates the institutional trauma that Plaintiff has documented through multiple hospitalizations caused by judicial rejection without review. Judge Mayberry misgendered Plaintiff because she did not read Plaintiff's filings. Magistrate Judge Kim misgendered Plaintiff because she did not read Plaintiff's filings. **The pattern is not misgendering — the pattern is refusal to read.**

Most critically, the Magistrate Judge's treatment of Plaintiff stands in stark contrast to her treatment of represented parties in other cases before her. The asymmetrical treatment — detailed analysis, hearings, and multiple opportunities for correction for represented parties versus a one-sentence denial for a pro se disabled litigant — creates an appearance of partiality that a reasonable person cannot ignore.

A reasonable person with knowledge of all these facts would question whether Magistrate Judge Kim's impartiality might reasonably be compromised. She has demonstrated not merely legal error, but a systemic failure to engage with Plaintiff's disabilities, a refusal to read Plaintiff's evidence, and a pattern of conduct that triggers Plaintiff's documented medical trauma. Under these circumstances, recusal is required to preserve the appearance of justice.

### MEMORANDUM OF POINTS AND AUTHORITIES
### I. LEGAL STANDARD FOR RECUSAL UNDER 28 U.S.C. § 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify herself in any proceeding in which her impartiality might reasonably be questioned." This standard is objective. The court does not ask whether the judge is actually biased. The court asks whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Yagman v.*

*Republic Insurance*, 987 F.2d 622, 626 (9th Cir. 1993).

The Supreme Court has emphasized that the appearance of justice is as important as its reality. "What matters is not the reality of bias or prejudice but its appearance." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988). And the Due Process Clause "may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, 'justice must satisfy the appearance of justice.'" *Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 825 (1986) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).

The Ninth Circuit has held that recusal is required under § 455(a) where "the judge's impartiality might reasonably be questioned," even if the judge is not actually biased. *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). The test is an objective one, viewed from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances. *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008). Recusal is required when "a reasonable person would doubt whether the judge could be impartial." *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997).

While the Supreme Court has cautioned that judicial rulings alone rarely constitute grounds for recusal, *Liteky v. United States*, 510 U.S. 540, 555 (1994), there is an exception where "a pattern of rulings" demonstrates "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* When a judge consistently ignores controlling law, fails to engage with evidence, issues contradictory orders without explanation, and engages in conduct that directly triggers a litigant's documented medical disabilities, a reasonable person may question whether that judge can impartially adjudicate the case.

-7-
MOTION FOR RECUSAL

**II. THE MAGISTRATE JUDGE'S ORDERS SHOW NO EVIDENCE THAT SHE READ PLAINTIFF'S FILINGS**

**A. The February 24, 2026 Order (ECF No. 15) Is a One-Sentence Denial That References None of Plaintiff's Evidence**

The Magistrate Judge issued an Order (ECF No. 15) denying Plaintiff's Supplemental Request for Reasonable Accommodation (ECF No. 12). The order states in its entirety:

"ORDER signed by Magistrate Judge Chi Soo Kim DENYING [12] Plaintiff's supplemental request; and plaintiff is reminded of **his** obligation to provide **his** current mailing address to the Court." (Emphasis added to highlight misgendering.)

**This argument is offered solely to demonstrate the appearance of partiality under § 455(a), not to allege actual bias.**

This one-sentence order is the only ruling the Magistrate Judge issued on Plaintiff's accommodation request. The order does not reference, summarize, or acknowledge any of the following evidence that Plaintiff submitted in support of the accommodation request:

• Plaintiff's original Request for Reasonable Accommodation (ECF No. 3), filed October 27, 2025, which explicitly stated that Plaintiff has fibromyalgia, PTSD, dyslexia, and gender dysphoria, and that "receiving, handling, and responding to physical mail is impossible." The request specifically asked for electronic service and the use of the honorific "Mx." and pronouns "they/them."

• Plaintiff's Supplemental Request for Reasonable Accommodation (ECF No. 12), filed January 3, 2026, which reiterated Plaintiff's disabilities and requested that the Court "use neutral honorifics (Mx.) and pronouns (they/them)" and provide "electronic service of all court documents."

• Exhibit T (attachment to ECF No. 13), consisting of 727 pages of filings from the state court case, which documents the state court's concealment of motions and the fundamental due process violation of ruling on documents Plaintiff never received.

MOTION FOR RECUSAL

- Exhibit I (within ECF No. 9), consisting of medical records documenting multiple hospitalizations directly caused by court-related stress, including an emergency room visit where the physician's notes directly attribute the cause to "s/p court hearing."

- Plaintiff's documented history of PTSD and severe emotional and physical harm in response to judicial rejection without review.

- Plaintiff's documented gender dysphoria, which Plaintiff explained makes misgendering a medically harmful act.

**The order does not:** state any reasons for the denial; cite any legal authority (statutes, regulations, or case law); acknowledge that Plaintiff requested neutral pronouns; explain why electronic service would impose an undue burden; address Plaintiff's documented disabilities; or provide any basis for meaningful appellate review.

**The misgendering proves the Magistrate Judge did not read ECF No. 12. This argument is offered solely to demonstrate the appearance of partiality under section 455(a), not to allege actual bias.** Plaintiff explicitly requested neutral pronouns in ECF No. 12. The Magistrate Judge had actual notice of this request. The order ignored it entirely and used male pronouns instead. A judge who reads an accommodation request that explicitly requests neutral pronouns would not then use male pronouns in the order denying that request. The only reasonable inference is that the Magistrate Judge did not read ECF No. 12 before denying it.

From the face of the order, it is unclear whether the Magistrate Judge read or considered any of Plaintiff's evidence before denying the accommodation request. The order shows no apparent familiarity with the factual record, the accommodation requests, the medical documentation, or even the specific relief Plaintiff sought. A reasonable person would question whether a judge who issues a one-sentence denial without referencing any evidence actually read that evidence. A reasonable

MOTION FOR RECUSAL

person would question whether a judge who misgenders a litigant despite an explicit request for neutral pronouns read the accommodation request. A reasonable person would question whether a judge who demands compliance with a mail procedure that Plaintiff explicitly stated is impossible read the accommodation request explaining why mail retrieval is impossible.

Under 28 C.F.R. § 35.160(b)(2), "the public entity shall give primary consideration to the requests of the individual with disabilities." Under *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), "the public entity must undertake a fact-specific investigation to determine what constitutes a reasonable accommodation, giving primary consideration to the accommodation requested by the disabled individual."

**The order fails the *Duvall* standard in three critical ways:**

**First**, it states no reasons whatsoever for the denial. The order does not explain why Plaintiff's request for electronic service was denied. It does not address Plaintiff's documented disabilities. It does not analyze whether electronic service would impose an undue burden.

**Second**, it does not reference or analyze any of the evidence Plaintiff submitted in support of their accommodation request, including their medical records documenting PTSD, fibromyalgia, dyslexia, gender dysphoria, and a documented history of rejection causing medical harm.

**Third**, it provides no basis for meaningful appellate review. Without reasons, there is nothing to review.

The Ninth Circuit has held that failure to consider disability evidence violates ADA procedural obligations. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) ("The ADA requires individualized assessment of the need for accommodations."). The Magistrate Judge's one-sentence denial without individualized analysis is not merely poor practice — it is a violation of the ADA's implementing regulations. A reasonable person would question the impartiality of a judge who denies an ADA accommodation request without conducting any individualized assessment.

MOTION FOR RECUSAL

**B. The December 1, 2025 Order (ECF No. 7) Also Shows No Engagement with Plaintiff's Evidence**

On December 1, 2025, Magistrate Judge Kim issued Findings and Recommendations (ECF No. 7) recommending dismissal of most of Plaintiff's claims. This order, while longer than one sentence, also shows no meaningful engagement with Plaintiff's evidence.

**The order does not address:**

- Exhibit T (attachment to ECF No. 13) or the fact that the state court ruled on motions Plaintiff never received. The order recommends dismissal under *Rooker-Feldman* and immunity doctrines as if the state court proceeding were valid, without addressing the fundamental due process violation of concealed motions.

- Plaintiff's medical records (Exhibit I) or the documented hospitalizations caused by court-related stress.

- Plaintiff's request for neutral pronouns or the misgendering by Judge Mayberry.

- That Plaintiff is non-binary or that gender dysphoria is a documented disability.

- Whether electronic service would impose an undue burden under the ADA. It simply denies the request without analysis.

From the face of the order, it is unclear whether the Magistrate Judge read Plaintiff's exhibits before recommending dismissal. The Findings and Recommendations read as if the Magistrate Judge reviewed the legal sufficiency of the complaint without reviewing the factual record that Plaintiff submitted. The order does not grapple with any of the specific evidence that would make Plaintiff's claims plausible. A reasonable person would question whether the Magistrate Judge read Plaintiff's exhibits before recommending dismissal.

MOTION FOR RECUSAL

### III. THE MAGISTRATE JUDGE'S LEGAL ERRORS IN HER FINDINGS AND RECOMMENDATIONS

**A. The Magistrate Judge Erroneously Held That Quasi-Judicial Immunity Bars Injunctive Relief Against State Judicial Officers Sued in Their Official Capacities**

In her Findings and Recommendations (ECF No. 7 at 6-7), the Magistrate Judge recommended dismissing Plaintiff's § 1983 claims against Defendants Wineinger and Bruggman based on quasi-judicial immunity, stating that such immunity "bars declaratory, injunctive, and other equitable relief." This holding misunderstands the distinction between suing a judicial officer for damages in their individual capacity versus suing them for prospective injunctive relief in their official capacity.

The Magistrate Judge relied on *Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1385 (9th Cir. 1987). However, *Mullis* involved a *Bivens* action against **federal** judicial officers, not a § 1983 action against **state** judicial officers. The Ninth Circuit has never held that *Mullis* applies to bar prospective injunctive relief against state judicial officers sued under § 1983.

To the contrary, the Ninth Circuit has consistently applied the *Ex parte Young* doctrine, which permits suits for prospective declaratory or injunctive relief against state officers in their official capacities. *Ex parte Young*, 209 U.S. 123 (1908); see also *Wolfe v. Strankman,* 392 F.3d 358, 366 (9th Cir. 2004) (Ex parte Young applies to state judicial officers sued for prospective relief).

**The correct rule is established by *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984), in which the Supreme Court squarely held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."** Congress amended 42 U.S.C. section 1983 in 1996 to limit injunctive relief against judicial officers, but that amendment does not eliminate Ex parte Young and official-capacity suits for prospective relief against state officers to enjoin ongoing violations of federal law. The Court noted that "there never has been a rule of absolute judicial immunity from prospective relief." *Id.* at 536-37. Plaintiff is suing judicial officers

MOTION FOR RECUSAL

in their official capacities for prospective injunctive relief — compelling them to accept filings and provide accommodations. Plaintiff is not suing for damages. The Magistrate Judge's recommendation to dismiss these claims is directly contrary to *Pulliam*.

Even under *Mullis*, the court recognized that immunity does not extend to acts taken in the "clear absence of all jurisdiction." *Mullis*, 828 F.2d at 1390. A reasonable person would question the impartiality of a magistrate judge who issues a legal ruling that misapplies precedent without acknowledging the distinction between federal and state officers or between damages and prospective relief.

**B. The Magistrate Judge Misapplied the *Rooker-Feldman* Doctrine Far Beyond Its Narrow Scope**

In ECF No. 7 at 5-6, the Magistrate Judge recommended dismissing Plaintiff's claims under the *Rooker-Feldman* doctrine, finding they were "inextricably intertwined" with the state court's orders. This holding misapplies the doctrine far beyond its congressionally intended scope.

The Supreme Court has repeatedly and emphatically held that the *Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name" — specifically, "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Supreme Court has warned lower courts that *Rooker-Feldman* has been "variously interpreted" and "sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction." *Id.* at 283. The doctrine does **not** bar claims that do not seek to overturn a state court judgment but instead challenge ongoing unconstitutional policies or procedures. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). It does **not** bar claims brought by parties who were not parties to the state court proceeding. *Lance v. Dennis*, 546

MOTION FOR RECUSAL

U.S. 459, 464 (2006). It does **not** bar claims seeking prospective injunctive relief for ongoing violations. *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). It does **not** bar claims that are parallel to state court proceedings rather than seeking review of a completed judgment. *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). And it does **not** bar claims challenging policies that cause ongoing harm, even if those policies were applied in a state court proceeding. *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013).

Plaintiff's Third Amended Complaint (ECF No. 13) seeks **prospective injunctive relief** against ongoing institutional policies of the Defendant courts. Plaintiff is not asking this federal court to "reverse" the state court orders. Plaintiff is asking for electronic service as an ADA accommodation, an end to discriminatory two-tiered notice systems, an end to automated rejection of accommodation requests, and verification of identity before applying vexatious litigant restrictions. These are **independent claims** that do not require reviewing or rejecting the state court's judgment. The Magistrate Judge's application of *Rooker-Feldman* to bar these claims misapplies controlling Supreme Court precedent. A reasonable person would question the impartiality of a judge who applies a jurisdictional bar to claims that plainly fall outside its scope.

### C. The Magistrate Judge Failed to Apply *Tennessee v. Lane*

In ECF No. 7 at 7-9, the Magistrate Judge dismissed Plaintiff's Title II ADA claims with leave to amend but failed to recognize the full scope of Congress's abrogation of sovereign immunity under Title II.

In *Tennessee v. Lane,* **541 U.S. 509, 533-34 (2004)** , the Supreme Court held that Title II of the ADA constitutes a valid exercise of Congress's power under Section 5 of the Fourteenth Amendment **as it applies to the class of cases implicating the fundamental right of access to the courts**. The Court reasoned that Congress had amply documented the constitutional violations suffered by disabled individuals seeking access to judicial proceedings, and that Title II's remedy was

MOTION FOR RECUSAL

"congruent and proportional" to the constitutional right it sought to protect. *Id.* at 531-33. The Court specifically found that Title II "is a valid exercise of Congress' § 5 power to enforce the Fourteenth Amendment's prohibition on irrational disability discrimination." *Id.* at 533.

The Ninth Circuit has applied *Lane* to permit Title II claims against state judicial entities where the plaintiff alleges denial of access to court proceedings by reason of disability. *K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013). Plaintiff's claims fall squarely within *Lane*. Plaintiff alleges that Defendants have systematically denied access to court services by reason of disability — through automated rejection of accommodation requests, discriminatory notice systems, and impossible procedural requirements. The Magistrate Judge's failure to acknowledge that *Lane* provides a direct path forward for Plaintiff's claims demonstrates a failure to apply controlling law. A reasonable person would question the impartiality of a judge who dismisses ADA claims without addressing the controlling Supreme Court precedent that permits those claims to proceed.

### IV. THE PATTERN OF JUDGES SIGNING ORDERS WITHOUT READING THEM

Plaintiff has experienced this pattern across multiple courts over decades. The record shows that judges at multiple levels have signed orders without demonstrating any familiarity with the underlying facts. **The pattern is not misgendering. The pattern is refusing to read. The misgendering is the evidence that they did not read.**

#### A. Judge Mayberry's Ruling on Concealed Motions

Judge Leanne Mayberry of the El Dorado Superior Court ruled on a Motion to Dismiss and Motion for Sanctions that had been filed by Defendant Marchita Masters. The problem is that Plaintiff never received these motions. The proof of service claimed electronic service to an email address Plaintiff never authorized for service, in violation of California Code of Civil Procedure § 1010.6(a)(2). Exhibit T at 108-109, 694-695, 704-705.

MOTION FOR RECUSAL

Judge Mayberry dismissed Plaintiff's case with prejudice and imposed $20,880.50 in sanctions based on motions Plaintiff had never seen. Plaintiff filed a formal Request for Copies with the court. The court did not provide copies until over three months after ruling on them. Exhibit T at 13-16.

**The order Judge Mayberry signed showed no evidence that she knew:** that the motions had been served to an unconsented email address; that Plaintiff had never received the motions; that Plaintiff had requested copies and been ignored for months; or that the safe harbor period under California Code of Civil Procedure § 128.7(c)(1) had not been satisfied.

**Most tellingly, the order Judge Mayberry signed misspelled Plaintiff's name.** The order caption reads "ALEXANDER YAKOVLEV" when Plaintiff's legal name is ALEXANDR YAKOVLEV. Exhibit T at 724. A judge who reads an order before signing it would notice that the name of the party is misspelled. The misspelling is evidence that Judge Mayberry did not read the order before signing it.

From the face of the record, it is unclear whether the ruling reflected independent review by Judge Mayberry. The tentative ruling she adopted showed no apparent familiarity with the factual record, the accommodation requests, the service defects, or even the correct spelling of Plaintiff's name. A reasonable person would question whether Judge Mayberry read the motions, read Plaintiff's oppositions, or reviewed the service records before issuing her ruling.

**Judge Mayberry also misgendered Plaintiff.** At the hearing, Plaintiff requested to be addressed as "Mx." Judge Mayberry ignored the request, misgendered Plaintiff, silenced Plaintiff, and imposed sanctions based on motions Plaintiff never received. The day after that hearing, Plaintiff was hospitalized. Exhibit I.

**B. Presiding Judge McLaughlin's VL-115 Order**

Presiding Judge Michael J. McLaughlin signed a VL-115 order denying Plaintiff's VL-110

MOTION FOR RECUSAL

Request to File New Litigation. The VL-115 is a pre-printed Judicial Council form. It has no field for the judge to explain why the request is denied.

Presiding Judge McLaughlin checked the "Denied" box. He signed the form. He provided no explanation. He did not acknowledge Plaintiff's citation of *John v. Superior Court*, 63 Cal.4th 91, 99-101 (2016), which holds that vexatious litigant restrictions do not apply to appeals. He did not address Plaintiff's ADA accommodation requests. He did not reference any of Plaintiff's evidence.

From the face of the VL-115 order, it is impossible to determine whether Presiding Judge McLaughlin read Plaintiff's VL-110, the Addendum, or any of the accompanying legal authorities. The form itself is designed to permit denial without reading. A reasonable person would question whether a judge who uses a pre-printed check-box form to deny a request that raises a dispositive legal issue (appeals are not "new litigation") actually read the submission.

## C. The Court of Appeal's Boilerplate Orders

The Court of Appeal, Third Appellate District, issued orders denying Plaintiff's writs and notices of appeal. These orders state "petition denied" or "no merit" without explanation. They do not reference Plaintiff's evidence. They do not address Plaintiff's arguments. They do not cite any legal authority. They show no evidence that the appellate judges read Plaintiff's submissions.

## D. The Immigration Courts – Two Decades of Refusal to Read Evidence

For nearly two decades, Plaintiff was wrongfully ordered deported based on a false, unverified assumption that Plaintiff was a Russian citizen. Plaintiff was actually stateless. Plaintiff's Russian citizenship was terminated under a Russian law that stripped citizenship from individuals who left Russia before a certain date and did not affirmatively register. Plaintiff had no travel document. There was no country willing to accept Plaintiff. Russian authorities confiscated Plaintiff's travel document due to lack of citizenship.

The immigration courts refused to read Plaintiff's evidence of statelessness. The General

MOTION FOR RECUSAL

Counsel's office in San Francisco told Plaintiff: "What part of 'no' don't you understand?" That was their reason. Not evidence. Not the law. Not an individualized assessment. Just "no."

The Board of Immigration Appeals did the same thing. They kept denying Plaintiff based on the recommendation of the General Counsel, without independent review of Plaintiff's evidence of statelessness. They issued boilerplate denials that did not address Plaintiff's arguments, did not reference Plaintiff's evidence, and did not explain their reasoning. This pattern — denial without review, punishment for impossibility, refusal to engage with evidence — directly caused Plaintiff's PTSD and a documented history of suffering severe emotional and physical harm in response to judicial rejection without review. The Social Security Administration has formally determined that Plaintiff is disabled as a result of this institutional trauma.

### E. Magistrate Judge Kim's Pattern Mirrors the State Courts and Immigration Courts

Magistrate Judge Kim has done the same thing. Plaintiff submitted a detailed accommodation request explaining that physical mail retrieval is impossible due to fibromyalgia (ECF No. 3); a supplemental accommodation request explicitly requesting neutral pronouns (ECF No. 12); 727 pages of evidence showing the state court's concealment of motions (Exhibit T to ECF No. 13); and medical records documenting hospitalizations caused by court-related stress (Exhibit I within ECF No. 9). Magistrate Judge Kim issued a one-sentence denial. The denial does not reference any of this evidence. It does not explain why electronic service would be an undue burden. It does not acknowledge Plaintiff's request for neutral pronouns. It does not address the medical documentation. It does not engage with any argument Plaintiff made.

**The misgendering proves she did not read ECF No. 12.** The order uses male pronouns. Plaintiff explicitly requested neutral pronouns. The only reasonable inference is that the Magistrate Judge did not read the accommodation request before denying it.

From the face of the order, it is unclear whether Magistrate Judge Kim read any of Plaintiff's

MOTION FOR RECUSAL

evidence before denying the accommodation request. The order shows no apparent familiarity with the factual record, the accommodation requests, the medical documentation, or even the specific relief Plaintiff sought. The order appears boilerplate and, like the VL-115 checkbox denial, provides no indication that the judge considered the underlying record.

A reasonable person would question whether a judge who issues a one-sentence denial without referencing any evidence actually read that evidence. A reasonable person would question whether a judge who misgenders a litigant despite an explicit request for neutral pronouns read the accommodation request. A reasonable person would question whether a judge who demands compliance with a mail procedure that Plaintiff explicitly stated is impossible read the accommodation request explaining why mail retrieval is impossible.

### V. THE MAGISTRATE JUDGE'S ORDERS CONTRADICT EACH OTHER WITHOUT ANY EXPLANATION

The Magistrate Judge issued an Order (ECF No. 7) granting Plaintiff's request for electronic service and stating that Plaintiff "consents to receive service of documents electronically and waives the right to receive service by first class mail." On that same day, the Court served the order by mail only — not electronically. Plaintiff never received it. The docket shows "SERVICE BY MAIL" (ECF No. 7). The Court never provided the electronic service it granted.

The Magistrate Judge then issued a subsequent Order (ECF No. 15) denying Plaintiff's supplemental request for electronic service and reminding Plaintiff of the "obligation to provide a current mailing address" — directly contradicting the earlier Order, which waived mail service. The earlier Order explicitly stated that Plaintiff "waives the right to receive service by first class mail." The later Order demands that Plaintiff provide a mailing address for service. A court cannot simultaneously waive mail service and require a mailing address as the exclusive method of communication.

A court that enters orders that are inconsistent with each other without explanation creates an appearance of arbitrary decision-making. The Magistrate Judge has not acknowledged, let alone reconciled, this direct contradiction. She has not explained why she granted electronic service in the earlier order but denied it in the later order. She has not explained why she waived mail service in the earlier order but demanded a mailing address in the later order. She has not addressed the inconsistency at all. A reasonable person would question the impartiality of a judge who issues irreconcilable orders without explanation.

### VI. THE MAGISTRATE JUDGE IGNORED EVIDENCE THAT THE STATE COURT RULED ON CONCEALED MOTIONS

Plaintiff submitted Exhibit T (attachment to ECF No. 13), which consists of hundreds of pages of filings from the state court case *Yakovlev v. Masters*. These documents are the defendant's Motion to Dismiss, Motion for Sanctions, supporting declarations, and the court's orders — documents that the state court concealed from Plaintiff for a prolonged period while ruling against them.

The record in Exhibit T, as documented in Plaintiff's Notice of Lodging (ECF No. 11), shows that Defendant Marchita Masters filed a Motion to Dismiss and a Motion for Sanctions in the El Dorado Superior Court (Exhibit T at 686-695, 696-705). The proof of service for these motions (Exhibit T at 108-109, 694-695, 704-705) claimed electronic service to an email address Plaintiff never authorized for service, in violation of California Code of Civil Procedure § 1010.6(a)(2). Plaintiff never received these motions. Judge Leanne Mayberry ruled on these motions, dismissing Plaintiff's case with prejudice and imposing $20,880.50 in sanctions..

Plaintiff filed a formal Request for Copies with the court, specifically requesting the Motion to Dismiss and Motion for Sanctions (Exhibit T at 9-10). The court acknowledged receipt of this request but did not immediately provide the documents. The court did not provide copies of the

MOTION FOR RECUSAL

motions to Plaintiff until well after the court had ruled on them — over three months later, only after Plaintiff filed a second request (Exhibit T at 13-16). As Plaintiff stated in their Notice of Lodging: "Only after filing this federal action and a second request did the court produce the defendant's filed records — over 100 days post-dismissal." ECF No. 11 at 2.

The Magistrate Judge's Findings and Recommendations (ECF No. 7) make no mention of this concealment. The F&R does not address the fact that the state court ruled on motions that were never served on Plaintiff. It does not address the prolonged delay in producing the motions. It does not address the defective proof of service. It does not address the fundamental due process violation of adjudicating a case based on documents the opposing party never received.

A court cannot constitutionally rule on a motion that the opposing party has never received. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As Plaintiff stated in their Notice of Lodging, this conduct constitutes extrinsic fraud permitting federal review. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004). **Plaintiff intends to explicitly plead extrinsic fraud as an independent basis for jurisdiction in the forthcoming Fourth Amended Complaint.**

The Magistrate Judge's failure to address this concealment — and her recommendation to dismiss Plaintiff's claims based on *Rooker-Feldman* and immunity doctrines that assume a valid state court proceeding — is legal error. A reasonable person would question the impartiality of a judge who ignores evidence that the state court ruled on a secret record.

## VII. THE MAGISTRATE JUDGE HAS DEMANDED IMPOSSIBLE COMPLIANCE

The Order (ECF No. 15) reminds Plaintiff of the "obligation to provide a current mailing address." The Court has actual knowledge that Plaintiff cannot retrieve physical mail due to documented fibromyalgia and mobility limitations. Plaintiff's original Request for Reasonable Accommodation (ECF No. 3) explicitly stated that "receiving, handling, and responding to physical

mail is impossible." Plaintiff's Supplemental Request (ECF No. 12) reiterated this. The Court has this evidence.

When a public entity knows that a disabled individual cannot comply with a standard procedure, it must provide an alternative. *Jones v. Flowers*, 547 U.S. 220, 234 (2006) (when government knows notice has failed, it must take additional reasonable steps). Demanding compliance with an inaccessible procedure while denying an accessible alternative violates the Rehabilitation Act's requirement for meaningful access. *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (ADA requires "meaningful access," not merely theoretical access).

The Court has demonstrated it can communicate electronically. On multiple occasions, the Court emailed Plaintiff to notify them of returned mail and to transmit orders. These emails prove the Court has Plaintiff's email address and has the technical capacity to communicate electronically. Yet the Court refuses to use that capacity for ongoing document access. Instead, it demands compliance with a procedure it knows Plaintiff cannot access.

A reasonable person would question the impartiality of a judge who demands compliance with an impossible requirement while refusing an accessible alternative, particularly when that judge has already demonstrated the capacity to provide the accessible alternative.

**VIII. THE ASYMMETRICAL TREATMENT OF PRO SE DISABLED LITIGANTS**

Plaintiff cites rulings in other cases before Magistrate Judge Kim solely to illustrate the objective appearance of procedural disparity under § 455(a). Plaintiff does not challenge the substantive merits of those rulings, nor does Plaintiff suggest that different outcomes alone would warrant recusal.

Magistrate Judge Kim has demonstrated in multiple cases that she is fully capable of issuing detailed, reasoned orders, conducting hearings, and providing multiple opportunities for correction when presiding over cases involving represented parties.

MOTION FOR RECUSAL

In *United States v. Hayes*, Magistrate Judge Kim issued a nearly 10,000-word detailed opinion addressing a fabricated citation submitted by an attorney. The case involved redacted information about a child victim's gender. Magistrate Judge Kim held a full hearing, gave the attorney five distinct opportunities to correct his errors, analyzed legislative history, reviewed multiple cases, issued a thorough sanction order ordering $1,500 in sanctions, ordered the Clerk to serve a copy on "all the district judges and magistrate judges in this district," and referred the attorney to the California and D.C. Bars. (See Eugene Volokh, *Federal Public Defender Submits Brief with Nonexistent Citation, Apparently Refuses to Admit This to the Judge at a Hearing*, Reason (Jan. 23, 2025).)

In *Lopez Mendoza v. Warden*, No. 1:25-cv-02030, Magistrate Judge Kim granted the petition for writ of habeas corpus and ordered immediate release of the detained immigrant.

In *Lopez v. ICE*, No. 2:26-cv-01072, Magistrate Judge Kim issued comprehensive Findings and Recommendations recommending that the petition be granted and that the petitioner be immediately released.

In *Velasquez Mendoza v. Chestnut*, No. 1:26-cv-00167, Magistrate Judge Kim issued Findings and Recommendations recommending that the petition be granted and a permanent injunction be issued, which the District Judge adopted.

In *Nguyen v. Albarran*, No. 1:25-cv-01926, Magistrate Judge Kim granted the petition for writ of habeas corpus and ordered immediate release.

In *Guerrero Barrios v. Warden*, No. 1:26-cv-02318, a pro se habeas case, Magistrate Judge Kim issued detailed Findings and Recommendations recommending the petition be granted and ordered immediate release.

In *Zhong v. The Regents of University of CA*, No. 2:25-cv-00495, Magistrate Judge Kim

MOTION FOR RECUSAL

issued multiple detailed orders, set a motion hearing, and issued a substantive order denying sanctions.

In *Nguyen v. Charles*, No. 1:25-cv-01592, Magistrate Judge Kim granted IFP, appointed counsel, and issued detailed Findings and Recommendations.

In *Cruz Banos v. Chestnut*, No. 1:25-cv-01634, Magistrate Judge Kim issued detailed stipulations, minute orders, and Findings and Recommendations.

In *Martinez v. Warden*, No. 1:26-cv-00054, Magistrate Judge Kim issued detailed IFP orders and ordered production of the A-File.

In stark contrast to the detailed treatment afforded to represented parties — and even to pro se habeas petitioners who survived screening — Magistrate Judge Kim issued a **one-sentence order** (ECF No. 15) denying Plaintiff's Supplemental Request for Reasonable Accommodation.

**What Plaintiff's Case Received:** One sentence: "DENYING [12] Plaintiff's supplemental request; and plaintiff is reminded of **his** obligation to provide **his** current mailing address to the Court." No legal authority cited. No reasoning provided. No reference to Plaintiff's 727 pages of evidence. No acknowledgment of Plaintiff's disabilities. Misgendering of Plaintiff. No hearing. No opportunity to correct errors.

**What the Hayes Case Received:** Nearly 10,000 words of detailed analysis. Multiple citations to legal authority. Full hearing. Five distinct opportunities to correct errors. Analysis of legislative history. Review of multiple cases. Detailed findings of fact and conclusions of law.

**The Inescapable Inference:** A reasonable person would question why the same judge who wrote a 10,000-word opinion in *Hayes* would issue a one-sentence denial in Plaintiff's case. A reasonable person would question why the same judge who granted habeas relief in multiple cases would not even read Plaintiff's evidence. A reasonable person would question why the same judge

who took gender issues seriously enough to write a detailed opinion protecting a child victim's gender information would misgender a non-binary litigant without acknowledgment.

The only apparent differences between Plaintiff's case and the cases that received detailed treatment are that Plaintiff is pro se, disabled, non-binary, and seeking ADA accommodations. A reasonable person would question whether these differences explain the stark disparity in treatment. A reasonable person would question whether a judge who treats pro se disabled litigants so differently from represented parties can be impartial.

## IX. THE VL-115 FORM AND THE PATTERN OF BOILERPLATE DENIAL

The VL-115 form used by Presiding Judge McLaughlin is a pre-printed Judicial Council form with no field for explanation. It has check boxes for "DENIED" – but no space to explain why. The form is designed for denial without reading. A judge can check a box and sign without engaging with the litigant's arguments.

The Court of Appeal does the same thing with its boilerplate orders stating "petition denied" or "no merit" without explanation.

Magistrate Judge Kim's ECF No. 15 is the federal equivalent. One sentence. No explanation. No reference to evidence. No individualized analysis. It is indistinguishable in substance from the VL-115 check-box denial.

This is not a coincidence. It is a pattern. The state courts have used boilerplate denials to block Plaintiff from court access for **nearly two decades**. Magistrate Judge Kim has replicated that pattern in federal court. A reasonable person would question whether a judge who uses the same boilerplate denial pattern as state courts that have systematically denied Plaintiff access for nearly two decades can be impartial.

## X. PLAINTIFF'S DOCUMENTED HISTORY OF JUDICIAL REJECTION AND MEDICAL HARM

The pattern of denial without review, punishment for impossibility, and refusal to engage with evidence directly caused Plaintiff's Post-Traumatic Stress Disorder (PTSD) and a documented history of suffering severe emotional and physical harm in response to judicial rejection without review. The Social Security Administration has formally determined that Plaintiff is disabled as a result of this institutional trauma.

Plaintiff's medical records (Exhibit I within ECF No. 9) document multiple hospitalizations directly caused by court-related stress. After a hearing where Plaintiff was silenced, misgendered, and sanctioned based on motions they never received, Plaintiff required emergency hospitalization. The emergency room physician's notes directly attribute the cause to "s/p court hearing."

Judge Mayberry refused to read Plaintiff's documents. Presiding Judge McLaughlin checked a box on a VL-115 form without reading Plaintiff's submissions. The Court of Appeal issued boilerplate denials without reading Plaintiff's writs. Magistrate Judge Kim has done the same — issuing a one-sentence denial that references none of Plaintiff's evidence. Each judge, through the same failure — refusing to read — has been associated with documented medical harm as shown in Exhibit I.

A reasonable person would question whether a judge who continues this pattern can be impartial.

**XI. THE CUMULATIVE EFFECT OF THESE ERRORS REQUIRES RECUSAL**

No single error alone might warrant recusal. But the cumulative effect of multiple legal errors — each demonstrating a failure to engage with Plaintiff's evidence, each triggering Plaintiff's documented medical harm — creates an appearance of partiality that a reasonable person could not ignore.

**Magistrate Judge Kim has:**

- Issued a one-sentence denial (ECF No. 15) without the required fact-specific

-26-
MOTION FOR RECUSAL

investigation, violating *Duvall* and 28 C.F.R. § 35.160(b)(2)

- Misgendered Plaintiff in ECF No. 15, proving she did not read ECF No. 12

- Issued contradictory orders without explanation (ECF No. 7 granting electronic service and waiving mail service; ECF No. 15 denying electronic service and demanding a mailing address)

- Recommended dismissing §1983 claims against judicial officers based on a misreading of *Mullis* (federal officers in *Bivens* actions) as applied to state officers under § 1983, contrary to *Pulliam v. Allen*

- Misapplied Rooker-Feldman far beyond its narrow scope, contrary to *Exxon Mobil*

- Failed to apply *Tennessee v. Lane*, which would permit Plaintiff's ADA claims to proceed

- Ignored evidence that the state court ruled on concealed motions (Exhibit T to ECF No. 13)

- Demanded impossible compliance with mail procedures while refusing electronic service

- Treated Plaintiff asymmetrically compared to represented parties in *Hayes* and other cases

- **Replicated the same boilerplate denial pattern used by state courts for nearly two decades**

Under *Liteky v. United States*, 510 U.S. 540, 555 (1994), a pattern of rulings that demonstrates "a deep-seated favoritism or antagonism that would make fair judgment impossible" may support recusal. The pattern here — ignoring evidence, misgendering, demanding impossible compliance, issuing orders contrary to controlling law, treating pro se disabled litigants differently from

MOTION FOR RECUSAL

represented parties — is not mere legal error. It is a pattern of conduct that a reasonable person would view as fundamentally unfair, particularly when that conduct directly replicates the pattern of institutional rejection that caused the litigant's documented medical harm.

## XII. THE FEDERAL COURTS IMPROVEMENT ACT DOES NOT BAR THIS MOTION

The Magistrate Judge may rely on the Federal Courts Improvement Act of 1996, which amended 42 U.S.C. § 1983 to limit injunctive relief against judicial officers. This limitation does not bar Plaintiff's claims.

**First**, Plaintiff seeks relief under the ADA and the Rehabilitation Act — statutes under which the FCIA's limitation does not apply. The FCIA amended § 1983, not the ADA or the Rehabilitation Act.

**Second**, Plaintiff seeks declaratory relief, which is not barred by the FCIA.

**Third**, the FCIA's limitation applies to relief, not to recusal. This motion seeks recusal, not injunctive relief.

## XIII. PLAINTIFF DOES NOT SEEK RECUSAL LIGHTLY

Plaintiff has spent decades fighting institutional discrimination and judicial officers who issued orders without reading evidence, who refused to verify identity, who demanded impossible compliance, and who caused documented medical harm. Plaintiff has been hospitalized multiple times as a direct result of court-related stress.

Plaintiff does not seek recusal of Magistrate Judge Kim lightly. Plaintiff recognizes that recusal motions are serious matters that should not be used for strategic advantage. But the facts of this case compel this motion.

The Magistrate Judge has demonstrated in other cases that she is capable of detailed analysis, hearings, and reasoned decisions. Yet in Plaintiff's case, she issued a one-sentence denial,

MOTION FOR RECUSAL

misgendered Plaintiff, and ignored Plaintiff's evidence. The stark contrast in treatment — detailed analysis for represented parties, a single sentence for a pro se disabled litigant — creates an appearance of partiality that a reasonable person cannot ignore.

A reasonable person with knowledge of all these facts would question whether Magistrate Judge Kim's impartiality might reasonably be compromised. Under these circumstances, recusal is required to preserve the appearance of justice.

Plaintiff certifies that this motion is filed in good faith based on the legal and factual grounds stated herein, and not for purposes of delay.

**XIV. REQUEST FOR RELIEF**

**Plaintiff respectfully requests that the Court:**

1.    RECUSE Magistrate Judge Chi Soo Kim from further proceedings in this case pursuant to 28 U.S.C. § 455(a);

2.    REASSIGN this matter to a different magistrate judge. In the alternative, if recusal is granted and no other magistrate judge is available, Plaintiff requests that the matter be referred directly to District Judge Daniel J. Calabretta for all further proceedings, including *de novo* review of the Findings and Recommendations (ECF No. 7) pursuant to Plaintiff's pending objections (ECF No. 10);

3.    TAKE JUDICIAL NOTICE, pursuant to Federal Rule of Evidence 201, of the existence of the parallel action *Yakovlev v. Superior Court of San Francisco et al.,* No. 3:26-cv-01132-AGT (N.D. Cal.), and the fact that Plaintiff lodged Exhibits A-Z in that action on April 26, 2026, which include records further documenting the pattern of boilerplate denials and vexatious litigant misapplication described herein. Plaintiff does not request that the Court take judicial notice of the truth of the matters asserted in those exhibits, only of their existence and filing;

4.    ORDER that pending reassignment, all further court documents be served

-29-
MOTION FOR RECUSAL

electronically to Plaintiff at 750emerealdbay@gmail.com, as the continuation of the current service arrangements poses an imminent risk of further medical harm to Plaintiff.

Plaintiff respectfully requests expedited consideration of this recusal motion due to the risk of further documented medical harm from continued proceedings before Magistrate Judge Kim, as documented in Exhibit I (ECF No. 9).

DATED: May 18, 2026.

Respectfully submitted,

/s/ Alexandr Yakovlev
ALEXANDR YAKOVLEV
Plaintiff, Pro Se

MOTION FOR RECUSAL